**Patrick W. SAUNDERS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–1531.

District of Columbia Court of Appeals.

Argued Jan. 28, 1986.

Decided April 23, 1986.

Stuart Fisk Johnson, Washington, D.C., appointed by the court, for appellant.

Daniel S. Seikaly, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, and Kenneth W. Cowgill, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and MACK and ROGERS, Associate Judges.

PER CURIAM:

Following a probation revocation hearing, the trial court revoked appellant's probation and executed a sentence of five to fifteen years imprisonment. On appeal, appellant contends that the trial court's decision revoking his probation was not supported by substantial evidence, and thus was an abuse of discretion, and that the trial court's failure to execute a written statement containing evidentiary findings and reasoned conclusions of law was a violation of appellant's due process rights. We affirm.

I

In 1982, a jury convicted appellant of armed robbery.[1] Thereafter, Judge Shuker, the presiding trial judge, sentenced appellant to five to fifteen years imprisonment, but stayed execution of the sentence and placed appellant on a three-year period of probation. The main condition of his probation was that appellant complete all phases of the Second Genesis drug treatment program.[2]

Appellant entered the Second Genesis program on September 23, 1982. On June 18, 1984, however, the Second Genesis staff terminated appellant's participation in the program because appellant failed to comply with the program's rules. As a result, on September 24, 1984, Judge Shuker issued a written order to show cause why appellant's probation should not be revoked.[3]

A probation revocation hearing was held before Judge Shuker in October 1984. Three witnesses testified at the hearing: Hardy Bennett, Senior Program Therapist for Second Genesis; Edward Flowers, Assistant Regional Director of Second Genesis and Director of the D.C. Treatment Facility; and appellant.

Mr. Bennett testified that Second Genesis decided to terminate appellant from the program because of appellant's pattern of irresponsible behavior over approximately a twenty-one month period. He recounted a number of specific incidents, occurring between August 1983 and June 1984, which illustrated appellant's failure to comply with Second Genesis' rules. According to Mr. Bennett, appellant's violations of the rules included: (1) agreeing, without permission from the Second Genesis staff, to part company from a co-resident, who had been deliberately assigned to accompany appellant during a visit home, to "serve as [appellant's] strength in the community;" (2) having contact with, and taking the phone number of, a former Second Genesis resident who had absconded from the program, even though such contact directly violated Second Genesis' rule that once a person leaves the Second Genesis program unsuccessfully, a resident currently in treatment may not communicate with the former resident; (3) leaving Second Genesis premises with one of the program's vehicles on a specific errand that required approximately one hour to complete, and failing to return for over twelve hours; (4) failing to pay his rent in the amount of ten dollars per week even though he was financially able to do so; (5) operating his girlfriend's car in the community even though he did not have a driver's license; and (6) going to the vicinity of 9th Street and Florida Avenue, N.W., when he should have been at work, in contravention of the program's regulations prohibiting residents from going to that area because it is a high drug area.

1. D.C. Code §§ 22–2901, –3202 (1981). This court affirmed appellant's conviction in a Memorandum Opinion and Judgment dated November 23, 1983. *Saunders v. United States,* No. 82–1366.

2. The other conditions of appellant's probation were that he: (1) obey all laws; (2) keep all appointments with his probation officer; and

(3) maintain a full-time job or job training program.

3. The order specifically informed appellant that the ground for the show cause order was "Defendant's termination from Second Genesis, Inc., due to his irresponsible behavior."

Mr. Flowers' testimony corroborated Mr. Bennett's statements describing appellant's conduct. In addition, Mr. Flowers emphasized that either he or another staff member had thoroughly explained to appellant the rules and regulations which appellant later violated. Mr. Flowers testified that on a number of occasions he had attempted to discuss with appellant the problems with appellant's conduct. Moreover, appellant had previously been disciplined within the program both for specific violations of the rules and for "a combination of attitude and behavior, [and] a lack of motivation."

Appellant testified in his own defense. With respect to his alleged violations,[4] appellant explained that his contact with the former Second Genesis resident occurred accidentally, when the two unexpectedly met in D.C. General Hospital. He also admitted that he had used "bad judgment" in failing to return the program's van in a timely fashion. In addition, the defense introduced evidence that appellant had participated in "couple's therapy" with his girlfriend, had successfully worked his way through certain phases of the Second Genesis program, and had had regular urine analyses which all tested negative for drug use.

At the conclusion of the hearing, and after arguments from counsel, Judge Shuker made the following statement setting out the evidentiary basis for his ruling and the rationale underlying his decision:

Notwithstanding his conviction of a very, very, very serious crime, one that was life threatening and outrageous, I bought an argument that I should put Mr. Saunders on probation. Not something that I do lightly in an armed robbery case, not something I've done often. In fact, Mr. Saunders is only one of ... five people I've risked probation with

under those circumstances. And I did it in spite of the fact that he had a drug history in New York before his conviction in this case. And I did it for only one reason, and that was because he was going into the best rehabilitation program for people using narcotics that I know of in the whole world. And I did it because I know the conditions of that program were very tough, and I told Mr. Saunders about that up front. And I told him that was the only reason I was keeping him in the community now that he was, by history, an armed robber. But I told him that it was tough, and that the only way that he could stay on probation was to keep all of the rules and successfully complete the 2nd Genesis program.

2nd Genesis has terminated him. The ... issue [is] ... whether they did so arbitrarily and capriciously. From the testimony that I've heard, and primarily from Mr. Flowers, I am ... persuaded that they did not do so arbitrarily and capriciously, that they made a very wise and reasoned judgment over a period of time. That an escalation in incidents from August of '83, at least, up until this past early summer of violations of their rules led them to believe that Mr. Saunders was not successful within the program and that he should not be continued within their treatment mode. The evidence is clear that he did violate at least on four occasions, [5] rules of the organization, and that he either knew or should have known that he was violating them, and that certainly as a reasonable person he should have been able to perceive that repeated violations of the rules of the organization could lead to his termination, and it has.

---

**4.** At the outset of the hearing, appellant admitted driving his girlfriend's car without a license, and failing to pay his rent.

**5.** At the conclusion of his statement, Judge Shuker enumerated the four violations of Second Genesis rules to which he was referring as:

"Driving the car without a license. The August 1983 episode. The return of the van eleven hours after it was supposed to have been back, and the negligence in his obligation to pay his rent and instead using that money for things he considered more important."

Since he did not keep ... the most fundamental condition or the second most fundamental condition of his probation, successful completion of the program ... he is in violation of the conditions of his probation and that probation is revoked.

As I promised, Mr. Saunders, at the time that I tried this experiment in this serious case, if he couldn't keep the conditions of his probation, the sentence would be five to fifteen years in jail. And that sentence shall be executed.

## II

The decision whether to revoke probation is committed to the sound discretion of the trial court and typically involves a two step analysis: "(1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Black v. Romano,* — U.S. —, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985); *see Smith v. United States,* 474 A.2d 1271, 1274 (D.C. 1983).[6] Thus, the trial court may only revoke probation upon a finding that the express conditions of probation have been violated. *Carradine v. United States,* 420 A.2d 1385, 1389 (D.C.1980). Once a decision on revocation is made, we will reverse only if there has been an abuse of discretion. *Nelson v. United States,* 479 A.2d 340, 342 (D.C.1984); *Jones v. United States,* 401 A.2d 473, 477 (D.C.1979).

■ Appellant claims the trial court abused its discretion in revoking his probation because insufficient evidence was presented to support a finding that appellant had violated the conditions of his probation. Upon review of the testimony and evidence presented at the revocation hear-

ing, we conclude that appellant's argument is without merit.

Two representatives of Second Genesis testified that appellant's dismissal from the drug rehabilitation program was caused by a "pattern of irresponsible behavior." The witnesses described a number of specific incidents of such behavior, ranging from appellant's illegal operation of his girl-friend's car to the very serious violation of visiting a high drug neighborhood during working hours. They observed that appellant had repeatedly manifested an uncooperative attitude and a lack of motivation. Mr. Bennett testified that a decision was reached by a number of staff members that "[Second Genesis] certainly couldn't discharge [appellant] as a graduate based on all the information and on our treatment experience with him for 21 months." As such they felt that their only alternative was to dismiss him from the program.

Significantly, both Mr. Bennett and Mr. Flowers testified that the rules and regulations and the nature of the Second Genesis program had been explained in full to appellant upon his admission into the drug treatment program. Moreover, numerous attempts were made to discuss appellant's problems with him, to give appellant "second chances," and to discipline appellant within the program before deciding to permanently terminate him.

Appellant would have us focus separately on each particular event of misconduct enumerated by the Second Genesis witnesses. According to appellant, none of these violations (a number of which he acknowledged committing), viewed separately supports Second Genesis' decision to expel him from their program. However, neither Second Genesis, nor the trial court in reviewing the evidence, ever maintained that appellant's dismissal was caused by any one violation in particular. Indeed, the em-

6. In considering the second prong of this test, *i.e.* whether the violation warrants the revocation of probation, the trial court must balance "'the competing interests of the community in safety with the rehabilitative goals of probation.'" *Smith v. United States, supra,* 474 A.2d

at 1274 (quoting *Thompson v. United States,* 444 A.2d 972, 974 (D.C.1982)); *see Gagnon v. Scarpelli,* 411 U.S. 778, 784, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973). For a discussion of whether this balancing must be explicitly reflected in the trial court's final statement, see *infra* note 7.

phasis was quite the opposite. Both witnesses testified that the program terminated appellant because of a pattern of irresponsible behavior over a period of approximately twenty-one months. The specific violations enumerated by the witnesses illustrated this "pattern." In this regard, Mr. Bennett testified that "whenever we terminate a person, unless it's the result of cardinal rule violations, it's usually a pattern of behavior."

Alternatively, appellant maintains that the witnesses' references to his "uncooperative attitude" and "lack of motivation" demonstrate that Second Genesis *only* dismissed appellant from their program because they were dissatisfied with his "slick attitude." Appellant argues that a dismissal based solely on his alleged improper attitude is not a "willful" violation sufficient to trigger revocation of probation. *See, e.g., Davidson v. State,* 419 So.2d 728, 729 (Fla.App.1982); *cf. Bearden v. Georgia,* 461 U.S. 660, 668, 103 S.Ct. 2064, 2070, 76 L.Ed.2d 221 (1983) (sentencing court could not properly revoke probation where failure to comply with condition of probation—paying fine and making restitution—was not willful).

We need not decide whether a dismissal from a drug rehabilitation program based solely on an "uncooperative attitude" or "lack of motivation" could trigger a revocation of probation because we believe appellant has mischaracterized the testimony of Mr. Flowers and Mr. Bennett. Both witnesses cited appellant's attitude towards the program as only one of *several* reasons why the Second Genesis staff did not believe appellant could successfully complete the drug rehabilitation program. Thus, this case is distinguishable from *Davidson v. State, supra,* where the probationer was dismissed from a rehabilitation program solely because he expressed a desire not to participate further in that program. *See* 419 So.2d at 728–29. In contrast, in this case there was substantial evidence that appellant willfully violated specific rules of the program in addition to his other problems.

Given the total circumstances presented, we conclude that the trial court's decision to revoke probation was supported by substantial evidence in the record. Accordingly, we find no abuse of discretion.

### III

Appellant also maintains that he was denied due process at his probation revocation hearing because the trial court failed to execute a written statement setting forth the evidence relied on and the reasons for revoking probation.[7] At the conclusion of the hearing, Judge Shuker denied appellant's specific request for such a written statement on the grounds that both the evidentiary basis and rationale for the decision revoking appellant's probation were already set out explicitly in the transcript of the proceedings. Appellant now argues that this ruling was error, because under the Supreme Court's decisions in *Gagnon v. Scarpelli, supra,* and *Black v. Romano, supra,* only a separate written statement satisfies the due process requirements which attach to these hearings.[8] We

7. Appellant contends that the trial court's existing statement is also violative of due process because it fails to indicate whether Judge Shuker considered alternatives to incarceration before deciding to revoke appellant's probation. In *Black v. Romano, supra,* 105 S.Ct. at 2260, however, the Supreme Court expressly rejected the argument that such an on-the-record consideration of alternatives to imprisonment is required under the due process clause.

Emphasizing the need to "preserve the flexible, informal nature of the revocation hearing," the Supreme Court found that "a general requirement that the factfinder elaborate upon the reasons for a course not taken would unduly burden the revocation proceeding without significantly advancing the interests of the probationer." *Id.* at 2259. Thus, while the trial court must consider possible alternatives to imprisonment before revoking probation, the fairness guaranteed by due process generally does not compel an express consideration of such alternatives on the record. *Id.*

8. Alternatively, appellant contends that the trial court's findings are unclear and therefore *per se* invalid because the court did not specify which of two August 1983 incidents—the unauthorized

find that the transcript and record of the proceedings in this case satisfy the due process safeguards articulated in the Supreme Court's opinions.

In its most recent decision in this area, *Black v. Romano*, the Supreme Court reiterated the procedural requirements for probation revocation hearings, previously established in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli, supra.* The Court stated that a probationer

> is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation.

*Black v. Romano, supra,* 105 S.Ct. at 2258 (citing *Gagnon v. Scarpelli, supra,* 411 U.S. at 786, 93 S.Ct. at 1761). In regard to the written statement requirement, the Court explained that the purpose of such a statement is "to insure accurate factfinding with respect to any alleged violation and [to] provide an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Id.* at 2259. Thus, the issue before us is whether the trial court's transcribed statement in this case substantially satisfies the "written statement" requirement cited in *Black.*

We do not think that the trial court's refusal to execute its evidentiary findings and reasons for revoking probation in separate written form rendered appellant's revocation hearing fundamentally unfair. *See Morishita v. Morris,* 702 F.2d 207, 209 (10th Cir.1983). In every major respect appellant's probation revocation hearing complied with the procedural due process requirements of *Morrissey, Gagnon* and *Black.* The trial court's order to show cause gave appellant written notice of the alleged violation of the conditions of his probation. Appellant also had an adequate opportunity to consult with counsel prior to the hearing. The hearing itself was an adversarial, evidentiary hearing at which appellant was represented by counsel, and had a full opportunity to present testimony and mitigating evidence, and to cross-examine witnesses. *See Smith v. United States, supra,* 474 A.2d at 1273.

Moreover, we believe that in this case the transcript containing the trial court's findings of fact and decision satisfies both the underlying purpose and the specific requirement of a "written statement," as discussed in *Black.* First, we have held previously, in the context of other types of hearings, that a reporter's transcript of the trial court's reasoned holding can serve as the equivalent of a written statement. *See, e.g., DeVeau v. United States,* 454 A.2d 1308, 1316 (D.C.1982) (pre-trial detention hearing), *cert. denied,* 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983); *Villines v. United States,* 312 A.2d 304, 306 (D.C. 1973) (bail review hearing).[9] Indeed, we

---

separation from a fellow resident during a visit home, or the meeting with a former Second Genesis resident at D.C. General Hospital—he was relying on as an evidentiary basis for revoking probation. *See supra* note 5. We do not believe that Judge Shuker's reference to the "August 1983" incident, without more specificity, makes the court's findings inadequate for due process purposes.

Appellant's argument really goes to the adequacy of the factual findings and not to their form. Insofar as appellant again questions the substantive basis for the revocation decision, we stated above that the trial court had ample reason to accept Second Genesis' assertion that they terminated appellant because of a pattern

of irresponsible behavior. Whichever August 1983 violation the trial court was referring to was only one of a number of violations reflecting this pattern of misconduct. It is clear that even without either August 1983 incident, Second Genesis presented substantial evidence to support their decision. Therefore, we believe that any minor confusion which may exist in this regard is *de minimis* when viewed in the context of all the evidence presented at the hearing.

9. Under the rules of this court and the Superior Court Rules of Criminal Procedure, all criminal court proceedings must be recorded by a reporter by stenographic or other means, and verba-

recently stated this very proposition in dicta in a decision involving a probation revocation hearing. *See Smith v. United States, supra,* 474 A.2d at 1273 n. 6 (citing *Kartman v. Parratt,* 535 F.2d 450, 457–58 (8th Cir.1976)). Similarly, revised Super.Ct. Civ.R. 52 expressly permits the trial court, sitting without a jury, to issue its required findings of fact and conclusions of law "orally in open court if recorded stenographically or by other means approved by the court." According to the comment accompanying Super.Ct.Civ.R. 52, the revisions to the rule, which distinguish it from its counterpart under the Federal Rules of Civil Procedure, were necessitated by the time demands of the court's massive volume of litigation and are designed to insure all litigants a fair and adequate statement of the grounds of any decision in their cases, "while at the same time making clear that such statements of fact and law need not be unduly lengthy nor presented in written form." Clearly, the rationale underlying these revisions allowing for oral findings is applicable in other contexts as well.

Second, the trial court's remarks in this case, which are set out in full in the transcript, conform substantively to the guidelines set out in *Black* and the other Supreme Court cases dealing with fundamental due process at revocation hearings.

Specifically, Judge Shuker's findings included a statement of the evidence upon which he relied [10] in reaching his decision and a thorough explication of his reasons for revoking appellant's probation. *See Black v. Romano, supra,* 105 S.Ct. at 2258. We find that these remarks reflect the trial court's careful consideration of the evidence presented at the hearing, and provide this court with an adequate basis for reviewing the trial court's decision. *See id.*

Of course, "pro forma language and routine phrases will not satisfy" the written statement requirement discussed in *Morrissey, Gagnon* and *Black. See United States v. Martinez,* 650 F.2d 744, 745 (5th Cir.1981). However, where, as in this case, the trial court dictates into the record, evidentiary findings and reasoned conclusions for revoking probation, which are subsequently transcribed verbatim by a court reporter, we believe the "written statement" requirement of fundamental due process is fulfilled. *See id.* at 745 n. 1; [11] *Morishita v. Morris, supra,* 702 F.2d at 209–10. We cannot see how appellant's due process interests in receiving a fair hearing and decision could be further served by remanding this case to the trial court for the preparation of an additional written statement.[12]

We hold that the transcript and record in this case satisfy appellant's due process

---

tim transcripts of the proceedings must be made available upon request to a criminal defendant to the extent necessary to facilitate an appeal. *See* Super.Ct.Crim.R. 36–I; D.C.App.R. 23(b); *Cole v. United States,* 478 A.2d 277, 278–79 (D.C. 1984).

10. For example, Judge Shuker states that he credited the testimony of the government's witnesses, and in particular that of Mr. Flowers. Judge Shuker also lists the four specific incidents which he believed most strongly illustrated appellant's failure to comply with the program's rules.

11. We are aware that a recent decision of the United States Court of Appeals for the Eighth Circuit can be read to reflect a contrary position. *See United States v. Smith,* 767 F.2d 521 (8th Cir.1985). In that case, the court, relying on the Supreme Court's opinion in *Black v. Romano,* held that the trial court's failure to execute a written statement violated the defend-

ant's due process rights and required a remand for the purpose of preparing such a written statement.

*Smith* is distinguishable from the instant case in an important respect. In *Smith,* the judge's entire remarks at the conclusion of the revocation hearing consisted of the statement "I revoke the probation. I'm ready to impose sentence." *See id.* at 522. Thus, both the defendant and the appellate court were unable to determine the basis for the trial court's decision. *Id.* at 524. In contrast, the trial court's remarks in this case were far more extensive and illuminating.

12. Notwithstanding our conclusion in the instant case, we observe that a more cautious approach would be for the trial court to issue a separate written statement following a probation revocation proceeding.

right to a "written statement." Finding no error in the proceedings below, we affirm the trial court's order revoking appellant's probation.

*Affirmed.*