Diane N. **RESPER**, Appellant,

v.

**UNITED STATES**, Appellee.

**Nos. 86–121 and 86–384.**

District of Columbia Court of Appeals.

Submitted May 4, 1987.
Decided June 10, 1987.

---

**1258**

David Mehler, Washington, D.C., was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Mary Ellen Abrecht, Thomas F. McCarthy, and Jody Goodman, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER, MACK, and FERREN, Associate Judges.

FERREN, Associate Judge:

Diane Resper appeals the revocation of her probation. Following Resper's conviction for distribution of heroin, D.C.Code § 33–541(a)(2) (1986 Supp.), and a misdemeanor violation of the District of Columbia bail law, *id.* § 23–1327(a)(2) (1981), the trial court sentenced her to consecutive prison terms of five to fifteen years and one year, respectively. The court, however, suspended execution of these sentences on the condition that Resper enter and complete a drug rehabilitation program administered by the Comprehensive Alcohol and Drug Abuse Center (CADAC). Five months later, the court revoked Resper's probation and reimposed the prison sentences. We conclude that in doing so the trial court erred, because the record does not support an inference that Resper violated any requirement imposed by the court as a condition of her probation. Accordingly, we reverse and remand for reinstatement of probation.

### I.

At the sentencing hearing, the trial court acceded to Resper's request for permission to attend the CADAC program. The court made clear, however, that it had considerable reservations about Resper's willingness and ability to reform her drug habit. The trial judge told Resper that he was "less than impressed [with] people who, when suddenly faced with fifteen years in jail, are now very eager to start drug treatment." He then said,

> I am going to place you on probation on the condition that you enter and complete the CADAC program, which is the six-month residential program and fourteen-month follow-up program; and, thereafter, you continue on probation and drug treatment probation for another two years....

> If you stay off drugs, you don't sell them any more, you don't use them any more, it will be over. But if you have just been spinning me and have decided that now is a good time to tell the judge I am ready to reform so I don't have to go to jail, well, then I am sure that when you are brought back because you didn't complete the program or because you are once again using drugs, then, needless to say, you will have violated the conditions of probation and you will serve the full sentence.

The judge ordered that Resper remain incarcerated until a place became available for her at CADAC: "I am going to hold her in confinement here on the condition that she not be released until she is admitted to the CADAC program. At that point she will be directed to the program and complete it."

Contrary to the trial court's order, the jail mistakenly released Resper on May 22, 1985, although CADAC had not informed the jail a place was available for her. Thus, Resper was not turned over to a CADAC official; she simply went home. Soon afterward, a space did open at CADAC. On May 30, Ernest Ricks, a CADAC employee, went to the jail to obtain Resper's release and take her to begin the program. Ricks learned then that Resper had left the jail. In June 1985, the trial judge issued a bench warrant for Resper's arrest and reincarceration. In July 1985, before the warrant had been executed, Resper herself called Ricks, whom she had met during a pre-sentence interview to deter-

mine whether CADAC would be willing to take her. As Ricks recalled later at the revocation hearing, "I suggested that she come over and see me Monday." Resper said she would but did not appear. She called Ricks again four days later "inquiring about a bed" at CADAC. Ricks testified that when he asked her why she had not kept the first appointment, Resper replied that ulcers on her leg had prevented her. Ricks testified that he "advised her to come see me and to bring probation papers with her," which Resper said she would do. But, according to Ricks, Resper did not come; nor did she call Ricks again. Ricks did not testify he had told Resper that a space was available for her at CADAC, or that failure to keep either appointment would jeopardize or foreclose her entering the program, or that failure to enter the program by a certain date would end her opportunity to do so.

In September 1985, Resper was arrested on the bench warrant and returned to custody. The probation revocation hearing took place in October. At the hearing, Ricks recounted his telephone conversations with Resper. When the court asked whether he could have placed Resper in the CADAC program if she had kept her appointments with him in July, Ricks responded, "I believe I would have." Mary Cross, a probation officer assigned responsibility for Resper's case, testified that Resper's file showed no record that she had contacted any probation officer during her interval of freedom between May and September 1985. The court concluded that Resper was

> placed on probation on the condition that she enter the [CADAC] program. She was released from jail, and she made no effort to enter the program. That there was an administrative oversight and she was not handed over to anyone would be something the Court would overlook if the defendant had gone to the [CADAC] program and made arrangements to enter; but the truth of the matter is—and I so find—that this defendant never made any effort to go to the program and was invited to come over specifically so that arrangements could be made and she in

fact did not appear and she appears now only when she had been rearrested on this Court's warrant for failure to comply with the conditions of probation, and the Court places no credence in her desire to enter into the program.

The court observed that a drug rehabilitation program can succeed only if the patient is willing to enter and complete it. The court stated, "I see no reason to place this lady in a program when it is quite plain she's not interested, except under pain of not [sic] going to jail."

## II.

■ Resper first contends the trial court lacked jurisdiction to revoke her probation because she had not begun her probationary term at the time of the actions giving rise to the revocation. This court has held that:

> "If, at any time before the defendant has completed the maximum period of probation, *or before he has begun service of his probation*, he should commit offenses of such nature as to demonstrate to the court that he is unworthy of probation ... the court could revoke or change the order of probation."

*Wright v. United States*, 315 A.2d 839, 841 (D.C.1974) (quoting *James v. United States*, 140 F.2d 392, 394 (5th Cir.1944) (Waller, J., concurring)). Thus, the court has jurisdiction from the date of sentencing to revoke probation when a probationer commits a crime even before probation has begun. We hold the same principle applies to violations of any other condition of probation.

Resper argues, however, that her probation could not properly be revoked before her probationary term actually began, because she could not violate a condition of probation without being on probation. Even if we assume Resper was not on probation between May and September, 1985, we disagree with her premise here. Some probationary terms, such as the prohibition on committing further crimes, can be violated even before the probation begins; others, such as reporting to a probation officer, cannot. The question, then, is

not whether probation has begun but whether the probationer did, in fact, violate a condition of her probation. If she did, the trial court is perfectly within its power to revoke probation if it concludes that doing so would serve "the ends of justice and the best interest of the public, or the defendant." *Id.*

## III.

▮ Resper next argues the trial court erred because she did not violate any condition of her probation. Constitutional due process requires that, before revoking probation, the court must first determine that the probationer " 'has in fact acted in violation of one or more conditions' " of his or her probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 784, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973) (quoting *Morissey v. Brewer*, 408 U.S. 471, 479, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972)). Thus, "probation may not be revoked in the absence of a threshold determination that there has been a 'violation' of the express conditions of probation, or of a condition so clearly implied that a probationer, in fairness, can be said to have notice of it." *Carradine v. United States*, 420 A.2d 1385, 1389 (D.C. 1980) (footnote omitted). In effect, the loss of probation must have been a foreseeable consequence of the probationer's actions. *Id.* at 1389–90; *see also Douglas v. Buder*, 412 U.S. 430, 432, 93 S.Ct. 2199, 2200, 37 L.Ed.2d 52 (1973).

Once the trial court has determined that a probationer did violate a condition of probation, the decision to revoke or to continue the probation lies within the sound discretion of the trial court. *E.g., Saunders v. United States*, 508 A.2d 92, 95 (D.C.1986)

(citing cases). The threshold determination whether a probationer violated a condition of probation, however, is not discretionary; it is instead a mixed question of fact (primarily, what actions did the probationer take?) and of law (did these actions constitute a violation of the probationary conditions?).[1] In the present case, the facts of Resper's conduct are not in dispute; nor are the express terms of her probation announced by the trial judge at the May 1985 sentencing hearing. Thus, we have before us a pure question of law: whether Resper's actions can be grounds for revocation in light of the due process requirement that revocation have been a reasonably foreseeable consequence of the probationer's conduct.

The trial court did not see a violation in Resper's act of leaving the jail to live several months in freedom, for it was not Resper's responsibility to challenge the jail authorities' decision to release her. Moreover, no evidence was presented that Resper had not adhered to the court's injunction that she not use or sell drugs. Nor did the trial court revoke Resper's probation on the ground that she had not contacted a probation officer after her release. Instead, the court relied on two related facts: between May and September, 1985, she "never made any effort to go into the program" and did not appear at either appointment she made with Ricks.

As to the first, we do not believe that Resper's failure to enter the CADAC program by her own efforts violated a condition of her probation as the court stated these conditions at the May 8, 1985 hearing. Although it was an express condition

---

1. Our cases have not previously drawn this distinction but have typically stated simply that a decision to revoke is discretionary. *See, e.g., Saunders*, 508 A.2d at 95 ("The decision whether to revoke probation is committed to the sound discretion of the trial court...."); *Jones v. United States*, 401 A.2d 473, 477 (D.C.1979) (stating "it is provided by statute that revocation of probation is a matter of judicial discretion"); *cf.* D.C.Code § 24–104 (1981 & 1986 Supp.). As the Supreme Court has observed, however, "the decision to revoke probation typically involves two distinct components: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a *discretionary* determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Black v. Romano*, 471 U.S. 606, 611, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985) (emphasis added); *see Saunders*, 508 A.2d at 95 (quoting *Black*). While it is true that the first threshold inquiry usually will be primarily factual, it cannot be purely so. Any finding that a condition of probation has been violated, like a finding that a contract condition has been breached, embodies at least an implicit legal conclusion that certain acts constitute a violation of the probationary terms.

of Resper's probation that she enter and complete the drug program, the court also established a particular means for bringing Resper to CADAC, namely, transportation from the jail to CADAC by a program official when the program determined that space was available. Had Resper not been mistakenly released from jail on May 22, therefore, she presumably would have been enrolled in the CADAC program as the court had intended. But Resper's situation changed through no fault of her own. The jail authorities altogether upset the court's mechanism for ensuring that Resper attended the drug program, and the government never contended that Resper knew her release was unauthorized. Resper's release, therefore, created a new situation for which Resper was not responsible and the court simply had made no allowance.

The trial court did not explicitly consider at the revocation hearing whether Resper's unanticipated release from jail altered the responsibilities placed upon her at the time of sentencing; the court simply proceeded from the assumption that her release had that effect. We disagree with that approach; the court cannot be said to have imposed, at the time of sentencing, a contingent responsibility on Resper to use self-help to pursue CADAC if, perchance, she was released from jail erroneously. More specifically, while Resper's passivity with respect to entering the drug program may have justified the court's skepticism about her motives and strength of character, the court, precisely because of these doubts, originally had ordered Resper to wait for CADAC in jail rather than placing any responsibility for initiative on her shoulders when it set out the conditions of her probation. Accordingly, the court cannot properly use these very doubts about Resper to justify revoking probation under circumstances that were not of her making. Furthermore, the court imposed no maximum passage of time by which Resper had to have entered the program to preserve her probation. The court simply—and understandably—anticipated that Resper would be removed from jail as soon as the program was ready to take her. Her failure to enter the drug program by an arbitrary date not previously announced to the probationer, therefore, cannot be a ground to revoke probation.

As to the second ground for revocation, the court was concerned that Resper did not appear for the two appointments she had made with Ricks at CADAC. We conclude that this conduct, too, did not violate a term of her probation. If self-help was not a condition of probation, then Resper's failure to follow through on self-help cannot be a violation of probation. In any event, Ricks did not testify that he had told Resper a place was available for her when she called or that her failure to keep an appointment or to join CADAC by a certain date would jeopardize or foreclose her enrollment. Thus, Resper had no obvious basis for assuming that Ricks spoke with any authority in the matter. In answer to a question from the court, Ricks did state he thought a place probably was available for Resper at CADAC in July 1985. But whether a place actually was open at the time is entirely irrelevant to whether Resper broke a condition of her probation, especially because there is no evidence that Resper knew a place was available.

The trial court may have viewed Resper's calls to Ricks as proof that she herself believed she was obliged to get herself to the program. But, even assuming her calls were motivated by a concern that her probation may have required she contact CADAC, Resper's concern does not establish that she was, in fact, obligated to call CADAC by the terms of her probation. Whether she was legally bound to make her own way to CADAC depends not on Resper's beliefs or suspicions—which on the record here appear quite speculative—but on the court's words at the sentencing hearing. As noted above, we conclude the trial court's sentencing orders did not require Resper to reach the drug program by her own efforts. The trial court did not anticipate that Resper would be in the position of having to get to CADAC on her own, so the court made no provisions for her responsibilities were she released. Without such conditions, particularly as to

the time by which Resper would have to begin the program, Resper could not violate an express condition of her probation by simply remaining at large.

Nor, finally, do we believe Resper's actions can be said to have violated any implied condition of her probation. An implied condition must be "so clearly implied that a probationer, in fairness, can be said to have notice of it." *Carradine,* 420 A.2d at 1389 (footnote omitted). The trial court set up the terms of Resper's probation on the premise that the court, and thus Resper herself, would not have to rely on Resper's ability to act on her own in entering the program. Moreover, to make Resper's entering the program on her own into an implied condition would require the trial court to create an arbitrary time limit by which Resper had to act. Resper was arrested about four months after her release from jail. Especially in light of the fact that space is not always available at CA-DAC, we do not believe a four month time limit was "so clearly implied" that Resper had notice of it. Finally, Resper's failure to attend the two meetings with Ricks violated no implied condition because, as noted above, missing these two meetings did not foreseeably bar her from eventually entering the CADAC program.

## IV.

The trial court concluded that Resper's passivity amounted to avoidance justifying its lack of faith in her ability to rehabilitate herself, even with the help of CADAC. Its judgment may well be accurate. But the court first allowed Resper the opportunity to go into the drug program under conditions that at least would get her admitted into the program without relying on Resper's own efforts. Having done so, the court cannot take that opportunity away unless Resper takes actions she clearly could foresee would deprive her of it. That she has not done. The court, therefore, must once again allow Resper to enter the CADAC program from prison when a place becomes available for her, and it must rein-

state the original terms to govern her probation once she begins the program.

*Reversed and remanded.*