Edgar L. APPLEWHITE, Appellant,

v.

UNITED STATES, Appellee.

No. 91–CO–391.

District of Columbia Court of Appeals.

Submitted May 18, 1992.

Decided Sept. 15, 1992.

---

Mona Asiner, Alexandria, Va., appointed by the court, was on the brief for appellant.

Jay B. Sephens, U.S. Atty., and John R. Fisher, Elizabeth Trosman, Oscar S. Mayers, Jr., and Helene Kazanjian, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee. David Schertler, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before ROGERS, Chief Judge, and TERRY and KING, Associate Judges.

TERRY, Associate Judge:

Appellant pleaded guilty to two counts of second-degree burglary[1] and was sentenced to consecutive prison terms of five to fifteen years on each count. Execution of that sentence was suspended, however, and appellant was placed on supervised probation for five years. As one of the conditions of his probation, he was required to enter and complete a rehabilitation program at Second Genesis, a well-known local drug treatment facility. When he failed to meet this condition and certain others, appellant's probation was revoked. From the order of revocation he appeals; we affirm.

## I

Appellant entered the Second Genesis program in May 1988, just a few days after he was sentenced. A little more than a year later, in June 1989, the sentencing judge received a letter from Second Genesis stating that appellant had "absconded from treatment." The judge issued a bench warrant, but later quashed it and allowed him to remain on probation pending a further report from the probation officer. Several months later, after appellant had been arrested on a new charge in Maryland, the court issued an order directing him to show cause why his probation should not be revoked.

Following several postponements, a probation revocation hearing was scheduled for October 26, 1990. Appellant failed to appear for that hearing, however, and another bench warrant was issued. When appellant was arrested on that warrant on November 14, he tested positive for cocaine and opiates. At a hearing the next day, the probation officer, Jerry Hardy, sought revocation of appellant's probation based on his failure to comply with the original conditions imposed at the time of sentencing in 1988. Defense counsel conceded that appellant had violated the terms of his probation.[2] The court remarked that "those violations would clearly support revocation," and counsel replied, "That's correct." Accordingly, counsel agreed that a preliminary hearing to determine probable cause (*Peters I*) was unnecessary and that a final revocation hearing (*Peters II*) should be scheduled.[3] Pending the *Peters*

---

1. D.C.Code § 22–1801(b) (1989).

2. Counsel also acknowledged that when appellant was arrested, he had in his possession some "checks that are now the subject of a [new charge of] taking property without right," D.C.Code § 22–3816 (1989). Although the record is not entirely clear, it appears that this charge was eventually dismissed.

3. The separate stages of the two-stage procedure for probation revocation in the Superior Court are commonly known as *Peters I* and *Peters II* hearings. *See United States v. Peters,* No. 9956– 75 (D.C.Super.Ct. Dec. 12, 1975), published as an appendix to Judge Nebeker's concurring opinion in *In re A.W.,* 353 A.2d 686, 688 (D.C.1976). At the initial *Peters I* hearing, the court determines whether there is probable cause to believe that the probationer has violated a condition of probation. At the later *Peters II* hearing, the court decides whether to revoke probation. The procedural requirements for each phase of the process are outlined in the *Peters* opinion, 353 A.2d at 690–695, and have been codified in a court rule, Super.Ct.Crim.R. 32.1.

*II* hearing, the court ordered appellant to be held without bond.

Three hearings were held over the next three months. At the first of those hearings, appellant's counsel told the court that appellant had tested positive for the human immunodeficiency virus (HIV), which causes the disease known as acquired immune deficiency syndrome, or AIDS. Counsel asked that appellant be placed under house arrest, in lieu of probation revocation, so that he might receive outpatient treatment at the Whitman–Walker Clinic, which specializes in the treatment of persons who have AIDS or are HIV-positive. The court declined to put appellant under house arrest, however, unless his wife appeared in open court and acknowledged that she was aware of his HIV-positive status. Appellant's counsel replied that this proposal was "fair enough." The court referred the matter to the probation department to determine whether appellant would be a suitable candidate for house arrest.

At the second hearing several weeks later, Mr. Hardy, the probation officer, again recommended that appellant's probation be revoked because, even given his medical condition, he would not be likely to abide by his conditions of probation. Appellant's stepmother told the court that he could live with her in the event of his release. She also suggested that if his probation were transferred to North Carolina, he could live there with his mother. Appellant's wife was not present, however, and the court expressed its continuing concern about the wife's apparent ignorance of his medical condition[4] and its own lack of access to medical information about appellant's health. Mr. Hardy agreed to secure appellant's medical records for the court, and the case was continued pending their receipt.

At the next hearing appellant's counsel notified the court that appellant's wife, who like her husband was a drug user, had also contracted the AIDS virus. Mr. Hardy once again argued for revocation, and the prosecutor concurred, asserting that appellant's release might pose a risk to "other persons in the community whom he may also infect" because of his history of intravenous drug use. Mr. Hardy reminded the court that appellant's "probation was not all that good" and that he had been "uncooperative" in his dealings with the probation office. Appellant's counsel conceded that there had been "less than consistent compliance with probation," but urged the court not to order revocation. The court then announced that it would not hold a further hearing, but would review the medical records (which had not yet arrived but were "on their way to Mr. Hardy") and enter an appropriate order promptly thereafter.

Three weeks later the court issued a written order revoking appellant's probation and directing him to "serve the underlying sentence." In its order the court commented: "Defendant is a drug user and probably contracted his disease through the sharing of drug paraphernalia. Because of his addiction, the Court has substantial fears that if released he would continue his drug use and further jeopardize the health and safety of others in the community."[5]

## II

Appellant maintains that he was denied his right to be present at sentencing when the trial court revoked his probation in a written order, instead of convening a new sentencing hearing. Appellant was originally sentenced in May of 1988; he makes no claim that he was denied his right to be present[6] and to allocute[7] at

---

4. Both the court and counsel remarked that the relationship between appellant and his wife was "stormy."

5. The order did not mention appellant's frequent violation of the conditions of his probation.

6. *See* Super.Ct.Crim.R. 43(a).

7. *See* Super.Ct.Crim.R. 32(c)(1). The right of allocution is not a constitutional right, but a right granted only by rule. *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

that time. He contends instead that he was entitled to a second opportunity to allocute upon the trial court's revocation of his probation. This contention is without merit because he was not resentenced when his probation was revoked.[8]

D.C.Code § 24–104 (1989) gives to the court which grants probation to a convicted defendant the power to revoke that probation and to "require [the defendant] to serve the sentence or pay the fine originally imposed, or both ... or any lesser sentence. If imposition of sentence was suspended, the court may impose any sentence which might have been imposed." The trial court in the instant case, upon revoking appellant's probation in 1991, simply ordered into effect the prison sentence which it had imposed and then suspended in 1988. The court did not modify that sentence, add to it, or subtract from it. We therefore hold, like the majority of the federal courts in comparable cases, that a defendant need not be given an opportunity to allocute again when a sentencing court revokes probation and orders that a previously imposed sentence take effect. *United States v. Coffey*, 871 F.2d 39, 41 (6th Cir.1989); *United States v. Core*, 532 F.2d 40, 42 (7th Cir.1976).[9] Since the revocation order did not impose a new sentence upon appellant, he had no right to be present or to allocute when probation was revoked, and the trial court committed no error in issuing its order.

### III

Appellant's other argument concerns the factors which the court considered in deciding to revoke his probation. Appellant contends that the statements made by the judge in open court and in her revocation order indicate that his probation was revoked because he carries the AIDS virus. He maintains that his HIV-positive status is not a proper or sufficient ground for revocation. We read the record differently.

The trial court is vested with broad discretion to determine whether or not to revoke probation, and its decision either way may be reversed only if that discretion has been abused. *E.g., Saunders v. United States*, 508 A.2d 92, 95 (D.C.1986) (citing cases). In making that decision, the court "must balance the competing interests of the community in safety with the rehabilitative goals of probation." *Thompson v. United States*, 444 A.2d 972, 974 (D.C.1982).

The record in this case reflects an appropriate balancing of the several factors presented to the trial court. It is not at all clear that the court was as focused on appellant's HIV-positive status as he now asserts. The transcripts of the several hearings do contain some discussions about appellant's health and the danger of his passing the virus on to others if he were to remain at liberty. But the transcripts also reveal appellant's clear violation of the terms of his probation, including two rearrests, a failed drug test, non-compliance with the requirements of his drug program, and repeated failure to make scheduled contacts with his probation officer. Indeed, the probation officer cited those violations as the basis for his recommendation that appellant's probation be revoked, and appellant's counsel agreed with the court's statement that "those violations would clearly support revocation." In short, the record reveals several factors relevant to the trial court's decision, and

8. Appellant did not object when the trial court informed all parties at the last hearing that it would issue a written order as soon as it had a chance to examine appellant's medical records. As a result, he must demonstrate plain error in order to win reversal on this ground. *See Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc). He has not done so; indeed, he has not shown any error at all.

9. The one case which has held that the allocution right applies to resentencing after proba-

tion revocation involved an actual resentencing, not simply the execution of a previously imposed sentence. *United States v. Turner*, 741 F.2d 696, 698 (5th Cir.1984). In that case the court deferred sentencing when it originally placed the defendant on probation; consequently, after revocation of that probation, there was no sentence to be ordered into effect. The lack of an original sentence distinguishes *Turner* from *Coffey, Core,* and the instant case.

there is no reason for us to conclude that any one factor was given impermissibly great weight.

But even if the trial court did rely principally on appellant's HIV-positive status in deciding to revoke his probation, it is by no means clear that such reliance was or would be erroneous. Appellant's medical condition has a direct potential impact on the public health, especially in light of his history of intravenous drug use. The risk that he might pass the virus to another drug user or to a sexual partner is substantial, since the court obviously cannot guarantee that he will refrain from either drug use or sexual activity outside of prison. We see no reason for the court to ignore this risk or to pretend that it does not exist. On the contrary, we think it is a proper factor to be considered, along with all the other relevant factors, in any decision to revoke or continue probation.

We recognize, of course, that whenever a person divulges the fact that he or she carries the AIDS virus, that person may immediately become a victim of discrimination. The danger of such discrimination has led the Council of the District of Columbia to enact specific statutes to preserve the confidentiality of the medical records of people with AIDS, D.C.Code § 6–2805 (1989), and to ensure that such individuals have equal access to health insurance, D.C.Code § 35–223 (1988). While we recognize that this danger is very real, we do not see any such discrimination in this case. Appellant's HIV-positive status became an issue only after his counsel disclosed it at the hearing, and the court thereafter treated it with sensitivity and concern. Appellant's medical condition was a relevant factor for the court to consider, and the court's limited focus on it was in no way improper or prejudicial.

The order revoking appellant's probation is therefore

*Affirmed.*