Charles W. BROWN, Appellant,

v.

UNITED STATES, Appellee.

No. 04–CO–1250.

District of Columbia Court of Appeals.

Submitted March 29, 2006.

Decided June 8, 2006.

Marc L. Resnick, was on the brief, for appellant.

Kenneth L. Wainstein, United States Attorney, with whom John R. Fisher, Assistant United States Attorney at the time the brief was filed, Elizabeth Trosman and Kathleen J. Monaghan, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and RUIZ, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

Following a show cause hearing, the trial court revoked appellant Charles Brown's probation. He contends on appeal that "the trial court committed reversible error when it revoked [his] probation without holding a hearing that afforded him due process of law." We agree, reverse, and remand for a new hearing.

## I.

On January 4, 2002, appellant was convicted in a bench trial on one count of illegal dumping of automobile tires on an unauthorized dump site, in violation of D.C.Code § 8–902 (2001). He was sentenced to two years of supervised probation, coupled with a $1,000 fine payable in $500 installments during the first and second years of probation, respectively. Appellant was also ordered to undergo "drug testing and treatment as directed by probation," as well as to pay court costs of $50 on or before January 3, 2003, pursuant to the Victims of Violent Crime Compensation Act of 1981.[1]

On October 1, 2002, the court received a "probation violation report" indicating that appellant had failed to report for office visits on two occasions, tested positive for cocaine on six occasions, and failed to report for drug testing on six occasions.[2]

---

1. D.C.Code § 4–501 et seq. (2001).

2. The violations were summarized in the following footnote in the "Order to Show Cause" dated October 28, 2002: "The defendant has failed to keep scheduled appointments; tested positive for cocaine, and has failed to report for drug testing." There is no

Two days later, the court scheduled a hearing for October 28, 2002, for appellant to show cause why his probation should not be revoked. Copies of the show cause order were mailed to appellant at three different addresses. On October 28, 2002, a bench warrant was issued after appellant failed to appear for the hearing.

Almost twenty-two months elapsed before appellant was arrested and returned to court on the bench warrant on August 9, 2004. The trial court set bond at $1,000 and scheduled another show cause hearing for a week later on August 16. On the day of the hearing, the trial court received an "Alleged Violation(s) Report" dated August 12, 2004, indicating that appellant was subject to an outstanding traffic warrant, had failed to report for further instructions since May 28, 2004, and had been arrested for driving under the influence (DUI).[3] On August 16, 2004, the show cause hearing was continued to September 3, 2004. On August 18, appellant posted bond and obtained his release. On September 3, after the show cause hearing, the trial court revoked appellant's probation and sentenced him to ninety days in jail. The trial court also forfeited appellant's bond, but vacated the forfeiture four days later and ordered the return of the $1,000.

## II.

After the conventional exchange of "good mornings" among court, counsel, and others at the hearing, the show cause hearing proceeded in its entirety as follows:

Court: Mr. Brown. This is [sic] matter is before the Court in order to show cause. Madam.

CSO:[4] Yes, Mr. Brown has been non-compliant with his probation since August 2002. The last time, according to records—I just received this case on November of 03, and according to the last yes (indiscernible 09:42:13) of the last contact that was made by Mr. Brown was 9/30/02. And in reference to that conversation, he was afraid to report because he had a bench warrant. He didn't know who was going to care for his kids. Ever since then, there has been no contact with Mr. Brown. He failed to appear for a show cause hearing. A bench warrant was issued for failure to appear in Court, also for some traffic warrants. Probation is asking for revocation.

Court: The bench warrant was executed apparently on the 9th (indiscernible 09:42:48), which ultimately brings us to where we are today. Mr. [Appellant's Counsel]?

Counsel: Well, the question I have is whether or not if Mr. Brown has paid the $1,000 fine that was imposed by the Court, and I don't know what his explanation is for having been out of contact because I didn't tell the Court what happened?

Court: Well, I don't see any indication of anything. He hasn't done anything.

Appellant: I paid the $1,000.

CSO: I'm not sure about the fine. I haven't checked the file.

---

indication that the violation report itself was attached to the order to show cause.

3. There is no indication in the record that appellant received a copy of the August 12, 2004 violation report.

4. "CSO" stands for Community Supervision Officer (or probation officer) from The Court Services and Offender Supervision Agency (CSOSA) of the District of Columbia. D.C.Code § 24–131 (2001). The CSO who appeared at the hearing was Stephanie Johnson.

Court: I don't see anything in the record indicating. All right.

Counsel: Is there anything in the Court record that would—

Court: That's what I'm looking at.

Counsel: Oh.

Court: And I don't see anything. Okay.

Counsel: The $1,000 he paid was for bond, I think, Your Honor.

Court: Well, then that's a completely different matter.

Appellant: I put—I put paid money for my bond and paid the fine with.

Court: Nobody—I mean, I didn't forfeit it. I mean, nobody asked me for it, then.

Counsel: Well, our suggestion is that the Court consider doing that and terminating the probation as unsuccessful.

Court: I mean—I can only start to deal with one thing at a time.

Counsel: Of course, I'd note that he hasn't incurred any criminal violation since he was placed on probation by Your Honor.[5]

Court: Well, I believe that is what he is supposed to not do—

Counsel: Well, yes, I know. I understand that.

Court:—either.... He didn't pay the fine. He didn't pay the bond.

Unidentified speaker: Right, (indiscernible 09:44:37)

Court: Yes.

Unidentified Speaker: (Indiscernible 09:44:39)

Court: Okay, well he hasn't paid $50 Court cost, you know what I mean?

Unidentified Speaker: Okay.

Court: I mean, he literally did nothing. He hasn't done anything with regard to testing, treatment—hasn't paid for DBC [sic VVC].[6] He was re-arrested?

CSO: Re-arrested, under the influence and the SAT [7]—there was a referral that was placed, but he failed to appear for the referral also, for the drug and after-care treatment.

Court: All right, and the recommendation is revocation? Government counsel?

Counsel: [8] The government concurs and [sic] CSOSA's [9] recommendation for revocation.

Court: And Mr. Brown, do you wish to speak, sir?

Appellant: Yes, Your Honor. The reason why I didn't have an address, your honor. I got evicted, and I became homeless.

Court: All right, Mr. Brown, your probation is revoked. The Court sentences

---

**5.** In its brief on appeal, the government notes that appellant had been arrested for DUI on August 8, 2004, and that he also had a bench warrant issued for his failure to appear in the present case, but that he had not been convicted of any new offense while on probation.

**6.** "VVC" stands for court costs payable pursuant to the Victims of Violent Crime Compensation Act of 1981. See *supra* note 1.

**7.** Substance Abuse Treatment Referral Form.

**8.** It is unclear who made this response. In the transcript, "Counsel" refers to the attorney for appellant. Although the transcript

identifies CSO Stephanie Johnson as an Assistant United States Attorney, the government in its brief refers to her only as a "member" of CSOSA. *Supra* note 4. Thus, when the court inquired of "Government counsel," perhaps the court was referring to someone designated earlier as an "Unidentified Speaker." It seems unlikely that counsel for appellant made this representation on behalf of the government.

**9.** See *supra* note 4.

you to 90 days and bond will be forfeited.

CSO: May I be excused, Your Honor?

Court: All right.

Appellant: Geez.

The total time of the hearing, as evidenced by clock references in the transcript, did not exceed three minutes.

### III.

 D.C.Code § 24–304 (2001) [10] authorizes the trial court to revoke a convicted defendant's probation and to "require [the probationer] to serve the sentence or pay the fine originally imposed, or both, ... or any lesser sentence." *Applewhite v. United States*, 614 A.2d 888, 891 (D.C. 1992). This court has interpreted § 24–304 as a broad grant of authority, permitting "the trial court great leeway and flexibility to tailor the decision on [revoking] probation to each probationer's needs." *Carradine v. United States*, 420 A.2d 1385, 1389 (D.C.1980) (quoting *Jacobs v. United States*, 399 A.2d 38, 41 (D.C.1979)). Thus, the decision to revoke probation is committed to the sound discretion of the trial court and typically involves a two step analysis: (1) a retrospective factual question whether the probationer has violated a condition of probation, and (2) a discretionary determination as to whether violation of a condition warrants revocation. *Saunders v. United States*, 508 A.2d 92, 95 (D.C.1986) (citing *Black v. Romano*, 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985)); *see Smith v. United States*, 474 A.2d 1271, 1274 (D.C.1983). In mak-

ing the latter, discretionary decision, the court "must balance the competing interests of the community in safety with the rehabilitative goals of probation." *Applewhite*, 614 A.2d at 891 (quoting *Thompson v. United States*, 444 A.2d 972, 974 (D.C. 1982)); *see Resper v. United States*, 527 A.2d 1257, 1260 (D.C.1987).

 Supreme Court decisions have recognized that revocation of parole or probation "is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); *accord Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation revocation); *Harris v. United States*, 612 A.2d 198, 204 (D.C.1992) (probation revocation). As a result, probation revocation is governed by the "minimum requirements of due process." *Young v. United States*, 863 A.2d 804, 808 (D.C.2004) (quoting *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593). On the other hand, the due process clause of the Fourteenth Amendment (and, surely, the same clause in the Fifth Amendment applicable here) imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. *Bearden v. Georgia*, 461 U.S. 660, 666, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

 The Supreme Court has held that a probationer subject to a revocation proceeding is entitled to an opportunity to show not only that he did not violate the

---

10. D.C.Code § 24–304(a) (2001) provides in part: "At any time during the probationary term, the court may modify the terms and conditions of the order of probation, or may terminate such probation, when in the opinion of the court the ends of justice shall require, and when the probation is so terminated the court shall enter an order discharging

the probationer from serving the imposed penalty; or the court may revoke the order of probation and cause the rearrest of the probationer and impose a sentence and require him to serve the sentence or pay the fine originally imposed, or both, as the case may be, or any lesser sentence."

conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition. *Gagnon*, 411 U.S. at 790, 93 S.Ct. 1756; *Morrissey*, 408 U.S. at 488, 92 S.Ct. 2593. To these ends, the Court has emphasized that all courts have "an interest in assuring that revocation proceedings are based on accurate findings of fact and, where appropriate, the informed exercise of discretion." *Gagnon*, 411 U.S. at 785, 93 S.Ct. 1756. Accordingly, a probationer "is entitled to [1] written notice of the claimed violation of his probation; [2] disclosure of the evidence against him; [3] an opportunity to be heard in person and to present witnesses and documentary evidence; [4] a neutral hearing body; and [5] a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation." *Black v. Romano*, 471 U.S. 606, 612, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985) (citing *Gagnon*, 411 U.S. at 786, 93 S.Ct. 1756 (quoting *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593)); *accord Williams v. United States*, 878 A.2d 477, 485 (D.C. 2005); *Saunders*, 508 A.2d at 97. In addition, the probationer "is entitled to cross-examine adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation," and also has "a right to the assistance of counsel in some circumstances." *Black*, 471 U.S. at 612, 105 S.Ct. 2254 (citing *Gagnon*, 411 U.S. at 790, 93 S.Ct. 1756).

Appellant contends that the trial court failed to conduct a hearing that afforded him these procedural guarantees. In particular, appellant says that the trial court never asked him whether the assertions made at the hearing by CSO Johnson were true (see text at *supra* note 4) and never made a finding by a preponderance of the evidence that appellant had violated a condition of his probation. Nor, he notes, were any documents reflecting the alleged violations introduced in evidence. Finally, according to appellant, his lawyer at the hearing "never addressed the issue of [his] noncompliance with probation" and "never indicated at the hearing whether his client was contesting or admitting to the allegations in the violation report." In this connection, argues appellant, his lawyer "failed to advance or develop" appellant's testimony that he "got evicted" and "became homeless"—testimony, he appears to suggest, that had a bearing on his ability to comply with the terms of probation and to defend himself at the hearing. In fact, appellant notes, his lawyer "actually admitted to the court that he did not know his client's explanation for being out of contact." In these circumstances, he stresses, "the court had an affirmative obligation to see that justice be done, that the defendant's due process rights be assured." In failing to do so, the trial court plainly erred, he says—committing an error so " 'obviously and readily apparent' and 'so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.' *Foreman v. United States*, 633 A.2d 792, 795 (D.C.1993)."

Before discussing appellant's contentions, it is important to note that he is premising his appeal solely on the argument that the trial court committed plain error by depriving him of his right to due process; he does not argue separately that he received ineffective assistance of counsel under the Sixth Amendment.[11] That

11. Because appellant relies heavily on the deficiencies of his counsel at the hearing, the government, as a precaution, also has addressed constitutional ineffectiveness in its brief. But plainly, for reasons that we need not speculate about, appellant is using counsel's alleged deficiencies at the hearing exclusively as a basis for arguing that the trial court had a duty to step in to assure that appellant received a hearing that satisfied the

said, we agree with appellant's plain error contention.

In the first place, appellant does not claim that he failed to receive written notice of the October 3, 2002 order to show cause, which included a summary of the alleged violations of probation. See *supra* note 2 and accompanying text. But there is no record evidence that, before the August 16, 2004 hearing, appellant or his counsel was given "written notice of the claimed violation of his probation" specified in the August 12, 2004 "Alleged Violation(s) Report." Thus, while appellant was on notice of most of the violations charged, there is no record evidence that he was aware of the latest ones before he came to court, even though appellant could easily have been served with them before he posted bond and left jail on August 18. Accordingly, the first, "written notice" requirement was not fully complied with, and as a result we may not conclude that appellant could have been fully prepared for the hearing when it opened on September 3. *See, e.g., Morrissey*, 408 U.S. at 487, 92 S.Ct. 2593 ("The notice should state what parole violations have been alleged.").

As to the second requirement—"disclosure of the evidence against him"—it would appear that the full record of appellant's trial and probation, including all reported violations, were before the court and, presumably, available for inspection by appellant and his counsel at the hear-

ing. And the fourth requirement—"a neutral hearing body"—assuredly was met. However, the third requirement—"an opportunity to be heard in person and to present witnesses and documentary evidence"—was not fully satisfied.

In response to the court's invitation to speak, appellant said that he had become "homeless." Even if appellant should be deemed to have retained a copy of the first violation report since October 2002, and even if appellant was not prejudiced by his failure to learn of the second violation report until the hearing itself—despite violation of the "written notice" requirement—the claim that he was homeless required exploration. Otherwise, the court could not be assured that appellant, despite his availability in a jail cell from August 9 to August 18, 2004, had had an adequate opportunity to prepare for the hearing, especially because counsel himself evidenced little familiarity with appellant's situation.

In addition, the discussion that consumed most of the time at the brief revocation hearing concerned whether appellant had paid the $1,000 fine, which he twice claimed he had. He was not given an opportunity to explain himself, however. To the contrary, his counsel—without consulting appellant—accepted the court's observation that the record did not reflect payment.[12] Counsel then appeared to sug-

---

requirements of due process detailed by the Supreme Court in *Black, Gagnon,* and *Morrissey.*

12. Initially, counsel asked the court "whether or not if Mr. Brown has paid the $1,000 fine that was imposed by the Court." After appellant stated "I paid the $1,000," counsel told the court, "The $1,000 he paid was for the bond, I think, Your Honor," whereupon appellant replied, "I put—I put paid money for my bond *and paid the fine with.*" (Emphasis added.) Neither court nor counsel gave him an opportunity to explain. In light of appel-

lant's insistence that he had paid the fine, however, court and counsel were obliged at least to clarify the situation with him to assure that his statement was not necessarily taken as a lie. Moreover, if appellant had persisted in saying that he had paid the fine, court and counsel would have been obliged to inquire of him further as to whether he had any proof of payment, or perhaps even to have sought confirmation, one way or the other, from the criminal finance office.

gest that the bond be forfeited (presumably to cover the fine) and that appellant's probation simply be terminated "as unsuccessful," rather than revoked with attendant jail time.[13] The court never addressed this request.

 But even if the court could be said to have resolved properly, without further inquiry of appellant, that he had not paid the fine, and even if the court properly ignored counsel's proposal to convert the bond into payment of the fine, without revocation of probation, appellant's alleged homelessness—which was never inquired into—should have triggered still another inquiry which court and counsel ignored: Was appellant homeless to a point that it reflected an excusable inability to pay the fine? When a fine or restitution is imposed as a condition of probation, and "the probationer has made all reasonable efforts to pay ... yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." *Black,* 471 U.S. at 614, 105 S.Ct. 2254 (citing *Bearden,* 461 U.S. at 668–69, 103 S.Ct. 2064). It would appear that the fine at issue here was imposed as part of appellant's sentence, not as a condition of probation, although the schedule linking payment of the fine to periods of probation ($500 per year) arguably brings appellant's fine within the language from *Black* quoted above. If so, that would have obliged the trial court to examine appellant's efforts, if any, to pay the fine and, in the event of such efforts, to explore alternatives to revocation of appel-

lant's probation if the evidence were to reveal that he should not be faulted for his failure to pay. Neither counsel nor the court explored this issue for a client/defendant who not only had represented himself as "homeless" but also, according to the CSO, had failed to attend the first show cause hearing because, as appellant told another CSO, "[h]e didn't know who was going to care for his kids." Appellant, in short, received no opportunity to elaborate upon evidence proffered in mitigation.

Obviously, if the court were to have found, after adequate probing, that appellant assuredly had not paid the fine and had not been homeless, or at least not homeless enough to be unable to pay the fine or prepare for the hearing, then we could not say that he lacked "an opportunity to be heard in person and to present witnesses and documentary evidence," as *Black* and the other cases require. But, on this record, we cannot say that appellant was afforded his constitutionally required opportunity to be heard, given his statements at the hearing that were allowed no elaboration.

Finally, we do not believe that the fifth requirement—"a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation"—has been satisfied. *Black,* 471 U.S. at 612, 105 S.Ct. 2254. This court has acknowledged that "the transcript and record of the proceedings," without more, can "satisfy the due process safeguards" of the "written statement" requirement. *Saunders,* 508 A.2d at 96–97. But in doing so, we observed that the transcript and record must

---

**13.** Apparently, Superior Court judges from time to time terminate probation "as unsuccessful"—an intermediate disposition between a finding of successful completion of probation and an order of revocation. This intermediate disposition—a disposition on which this court has never ruled—is typically found in a particular context: the request for expungement of a finding of simple possession of a controlled substance after successful completion of probation pursuant to D.C.Code § 48–904.01 (2001). That statutory provision is inapplicable to this proceeding.

be complete enough to satisfy the purpose of the "written statement" requirement, namely, " 'to insure accurate factfinding with respect to any alleged violation and [to] provide an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence.' " *Id.* at 97 (quoting *Black*, 471 U.S. at 615, 105 S.Ct. 2254). In *Saunders*, we found the transcript sufficient for this purpose because "the trial court's remarks . . . conform[ed] substantively to the guidelines set out in *Black* and the other Supreme Court cases dealing with fundamental due process at revocation hearings. Specifically, [the judge's] findings included a statement of the evidence upon which he relied in reaching his decision and a thorough explication of his reasons for revoking appellant's probation." *Saunders*, 508 A.2d at 98.

We distinguished *Saunders* from the decision in *United States v. Smith*, 767 F.2d 521 (8th Cir.1985), in which the United States Court of Appeals for the Eighth Circuit held that the trial court's failure to execute a written statement violated the probationer's right to due process under *Black*. In *Smith*, the judge's entire remarks at the end of the revocation hearing consisted of two short sentences: "I revoke the probation. I'm ready to impose sentence." *Id.* at 522. In the present case, we have more than that. The court concluded: "He didn't pay the fine. He didn't pay the bond.[14] . . . I mean, he literally did nothing. He hasn't done anything with regard to testing, treatment— hasn't paid for DBC [sic VVC]." See *supra* note 6. A few seconds later the court ended the hearing:

> Court: And Mr. Brown, do you wish to speak, sir?

> Appellant: Yes, Your Honor. The reason why I didn't have an address, your honor. I got evicted, and I became homeless.

> Court: All right, Mr. Brown, your probation is revoked. The Court sentences you to 90 days and bond will be forfeited.

Under the circumstances, we do not believe that these articulations satisfy the "written statement" requirement.

It is important to note that appellant is not contending, and we certainly are not saying, that the evidence proffered at the hearing was insufficient for the trial court to revoke appellant's probation. Indeed, an unusual aspect of this case is that, although the brief hearing centered almost entirely on whether appellant had violated his probation by not paying the $1,000 fine, the trial court had before it a report indicating that during the first six months of appellant's probation he had tested positive for cocaine six times and failed to report for urine surveillance another six times, before CSOSA lost contact with him for the next two years. Yet the drug test results and failures to appear for testing were not cited to the court as grounds for revocation, and presumably for that reason the court made no inquiry into or findings with respect to these potentially more serious violations of probation. In short, there was substantial evidence, if credited, that might have justified revoking appellant's probation. But that is not the issue before us. The issue, rather, is whether appellant received the required due process by which he could challenge that proffered evidence or offer his own evidence in mitigation. Only if he received the kind of hearing envisioned in *Black, Gagnon*, and

---

**14.** It was clear from the record, however, that appellant had paid for his bond. The court soon recognized this and, as indicated earlier in Part I, soon vacated its order at the end of the hearing forfeiting the bond.

*Morrissey* might we be able to say that the court's conclusory "written statement ... as to the evidence relied on and the reasons for revoking probation" satisfied *Black's* fifth criterion. *Black,* 471 U.S. at 612, 105 S.Ct. 2254. In appellant's case, however, the hearing fell short, inevitably leaving the "written statement" requirement unmet. We cannot say that the trial court's brief statements during a three-minute hearing indicating its basis for revocation were sufficient to satisfy our decision in *Saunders,* as we interpret *Black.* That is to say, the court did not make findings that "included a statement of the evidence upon which [it] relied in reaching [its] decision and a thorough explication of [its] reasons for revoking appellant's probation." *Saunders,* 508 A.2d at 98.

One further comment is in order. We have addressed court and counsel collectively, rather than focusing on their responsibilities individually, because appellant has not charged his counsel at the probation hearing with constitutional ineffectiveness, see *supra* note 11, and because, in any event, appellant has not sought rehearing or brought some form of collateral attack that typically is necessary to establish, through additional proceedings, the requisite prejudice attributable to counsel's performance. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, we have engaged in "plain error" review of the trial court's ruling, since counsel at the probation hearing did not raise the arguments presented here for the first time on appeal. *See Allen v. United States,* 495 A.2d 1145 (D.C.1985) (en banc).

While the trial court ordinarily can expect counsel for the probationer to assert the due process rights granted under *Black, Gagnon,* and *Morrissey,* counsel's

default does not excuse the trial court from protecting those rights when they are plainly evident, clearly significant, and obviously ignored by counsel. In this case, even if the trial court should not be faulted for relying on the record (and on counsel's own reliance on it) as reason enough to ignore appellant's statement that he had paid the fine, we cannot overlook the court's decision to revoke probation without exploring the truth of appellant's uncontradicted statement that he was homeless. As we have explained, if true, appellant's homelessness, at a minimum, might well have been a factor mitigating his failure to pay the fine—a possibility that the trial court was bound not to overlook before deciding to revoke appellant's probation. Accordingly, we conclude that the trial court, in this three-minute hearing, committed plain error—error so "obvious and readily apparent" and "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity" of the probation hearing. *Harris v. United States,* 602 A.2d 154, 159 (D.C. 1992) (en banc); *Foreman,* 633 A.2d at 795; *see* Super. Ct.Crim. R. 52(b).

By now, of course, appellant has served long ago the ninety days in jail the court ordered, and precedent is available for arguing that the controversy in this case is moot. *See Marshall v. District of Columbia,* 498 A.2d 190 (D.C.1985); *Smith v. United States,* 454 A.2d 1354 (D.C.1983). The government, however, has not argued mootness or sought dismissal of the appeal. For that reason, coupled with the need this case suggests for reemphasizing the due process standards governing parole revocation as elaborated in *Black, Gagnon,* and *Morrissey,* we elect to decide the merits. *See In re Melton,* 597 A.2d 892, 908 n. 32 (D.C.1991) (en banc) ("No party has asked us to dismiss the appeal

as moot, and we see no reason to do so.") (citations omitted); *Atchison v. District of Columbia,* 585 A.2d 150, 153 (D.C.1991) ("Our decisions thus require the exercise of careful discretion in deciding whether to reach the merits of a seemingly moot controversy.").

*Reversed and remanded.*