*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CO-1105

ROBERT M. ALEXANDER, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-12801-01)

(Hon. Brian F. Holeman, Trial Judge)

(Submitted April 8, 2015                         Decided June 11, 2015)

*Lisa D. Chanel* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and THOMPSON, *Associate Judges*, and REID, *Senior Judge*.

THOMPSON, *Associate Judge*: Appellant Robert Alexander pled guilty to possession of marijuana on February 15, 2002, and was sentenced, without adjudication of guilt, to one year of probation. In this appeal, he challenges the September 11, 2013, judgment of the Superior Court revoking his probation and

sentencing him to 180 days' incarceration.  He argues that the court lacked jurisdiction to revoke his probation because, at the time it did so, the one-year probationary period had already expired.  He also contends that he was deprived of due process because the court did not afford him an "opportunity to be heard in person" before issuing the ruling revoking his probation.  We affirm.

## I.

On February 15, 2002, the Honorable Frederick Dorsey signed an "Order Imposing Probation Without Adjudication of Guilt" that required appellant to, *inter alia*, submit to testing, to complete recommended treatment for drug dependency, and to submit to the court a quarterly report from his probation officer.[1]  On February 20, 2002, Judge Dorsey issued an order setting a status hearing for 9:00 a.m. on January 6, 2003, — 40 days prior to the anticipated termination of appellant's probation — for the purpose of assessing appellant's compliance with the probation terms.  The record indicates that after appellant showed up late to court on January 6, 2003, and then failed to return to court after a lunch recess, the

---

[1]  The order also required appellant to "[o]bserve the general conditions of probation listed on the back of this Order," but the back of the Order does not appear in the record.

court issued a bench warrant for his arrest. Bench warrants were re-issued at least three times — in March 2004, in February 2005, and on July 15, 2013.

In August 2013, ten years after the scheduled January 6, 2003, status hearing, appellant was arrested on the warrant, and on August 30, 2013, he was brought before Judge Michael L. Rankin, who set the matter for a show-cause hearing before Judge Brian F. Holeman. At the show-cause hearing on September 11, 2013, a Probation Department representative informed the court that appellant had never reported to the probation agency following his sentencing in February 2002, even after the supervision officer contacted appellant by phone in April 2002, instructing him to report. The Probation Department representative requested revocation of appellant's probation "based on loss of contact." Appellant asserted through his attorney that he appeared at the status hearing in January 2003, with his 5-year-old son because he did not have any childcare arrangements, that the judge "directed him not to come back . . . until there was somewhere for him to place the child other than the courtroom," and that he did not return to court that day because he could not find a suitable place for the child. Counsel also explained that appellant never reported to probation because of transportation issues. In addition, counsel represented that after the January 2003,

status hearing, appellant made inquiries of court personnel about the status of his case and was told that there were no outstanding warrants for his arrest.

Judge Holeman found that appellant's "defense to the failure to appear [was] untenable" and that there was "absolutely nothing [on the record] to indicate that [appellant] either reported to probation or reported back to the judge before whom he was to appear for [the] status hearing."[2]  Judge Holeman further found that appellant's explanation that he repeatedly inquired about an existing warrant and was never informed of its existence was "entirely unavailing and not credible." Thereupon the court revoked appellant's probation for "violat[ing] the conditions of probation" and sentenced him to 180 days' imprisonment.

This appeal followed.  Appellant asks this court to reverse the adjudication of guilt and to remand the case for discharge of probation, dismissal of the charge against him, and expungement of his record.

## II.

---

[2]  "Certainly," Judge Holeman said, appellant "did not have the child with him . . . every workday, every hour . . . between the time he was sentenced in 2002 and the time of the status hearing that was to take place the next year.  So that failure to report for probation . . . is so blatantly in loss of contact status, there's not much more that needs to be said about that[.]"

D.C. Code § 24-304 (2012 Repl.) governs probation revocation. It provides in relevant part that "[a]t any time during the probationary term the court may . . . revoke the order of probation and cause the rearrest of the probationer and impose a sentence[.]" D.C. Code § 24-304 (a). We have interpreted this provision not necessarily to require that revocation occur during the probationary period, but "to require the court to act during the probationary term." *White v. United States*, 564 A.2d 379, 380 (D.C. 1989) (internal quotes omitted). "While we have not demanded that revocation in fact be completed during the period of probation, we have consistently held that a trial court must initiate revocation proceedings, or formally extend the length of probation, during the term originally set for probation." *Id.* "[A] formal order of extension of the probationary period for a specific time . . . is [not] necessary to toll the expiration of the probationer's term, if appropriate steps are taken by the trial court prior to that date to put the probationer on notice that probable cause exists for revocation of probation and [to] provide[] him an opportunity to be heard before revocation is effected." *Dent v. District of Columbia*, 465 A.2d 841, 842-43 (D.C. 1983) (per curiam). "[W]here the trial court has taken virtually any formal action to initiate revocation proceedings, or to extend the probationary period, prior to the expiration of probation, we have held this to be sufficient to provide the court with jurisdiction

to complete the revocation proceedings, even after the probationary term would have otherwise ended." *Sumpter v. United States*, 564 A.2d 21, 23 (D.C. 1989). "Where the trial court fails to take such action, it loses its jurisdiction to revoke probation upon expiration of the probationary term." *White*, 564 A.2d at 380-81.

## III.

As noted earlier, appellant's first argument on appeal is that the trial court did not have jurisdiction to revoke his probation in September 2013, because the probationary term had already expired. He contends that the trial court's jurisdiction ended on February 15, 2003, one year after the probationary period began, because the court failed to take any steps prior to that date to preserve its authority. The government responds that the court's issuance of the January 6, 2003, bench warrant was sufficient action within the prescribed probationary period to extend the probation term and to preserve the court's jurisdiction until the court had the opportunity to act at the September 11, 2013, show-cause hearing. The government also argues that appellant's act of absconding from supervision when he failed to re-appear for the status hearing on January 6, 2003, tolled the probationary period until appellant returned to supervision upon his arrest in August 2013. The government asserts that the 40 days that then remained on

appellant's probationary period had not expired when Judge Holeman revoked his probation.

The bench warrant issued in this case on January 6, 2003, refers to the charge of possession of marijuana but says nothing at all about possible revocation of appellant's probation. Moreover, it appears that appellant did not see that warrant or the subsequent ones at least until August 2013. For those reasons, we cannot conclude that the warrant(s) substituted for "a formal order of extension of the probationary period for a specific time," as it did not "put the probationer on notice that probable cause exists for revocation of probation[.]" *Dent*, 465 A.2d at 842-43. We agree with the government, however, that appellant's abscondence (i.e., his failure to appear on the afternoon of January 6, 2003) and the resultant issuance of the bench warrant tolled the running of the probationary period until appellant was arrested in August 2013, and "provide[d] the court with jurisdiction to complete the revocation proceedings, even after the probationary term would have otherwise ended." *Sumpter*, 564 A.2d at 23.

In *Belcher v. United States*, 572 A.2d 453 (D.C. 1990), we adopted the principle that "a person on probation cannot obtain credit against his term 'for any period of time during which he was not, in fact, under probationary supervision by

virtue of his own wrongful act.'" *Id.* at 454 (citing *United States v. Workman*, 617 F.2d 48, 51 (4th Cir. 1980)). Applying that principle, we agree with courts that have held that "a term of supervised release is tolled when a defendant absconds" and that "'[f]ugitive tolling begins when the defendant absconds from supervision — making it impossible for the Probation Office to supervise his actions — and ends when . . . authorities are capable of resuming supervision.'" *United States v. Buchanan*, 638 F.3d 448, 454 (4th Cir. 2001) (quoting *United States v. Ignacio Juarez*, 601 F.3d 885, 890 (9th Cir. 2010) (per curiam));[3] *see also State v. Hackett*, 609 S.E.2d 553, 555 (S.C. Ct. App. 2005) ("[T]he court properly determined probation should be tolled during the time between the issuance of the probation arrest warrant on January 5, 1995 and the time Hackett actually appeared before the court on that warrant on February 5, 1999."); *Ware v. State*, 474 So.2d 332, 334 (Fla. Dist. Ct. App. 1985) ("[S]imple logic[] indicates that where a probationer absconds from supervision, the probationary period is tolled until he is once more placed under probationary supervision.") (internal quotes omitted). Some courts

---

[3] In *Buchanan*, the defendant's five-year period of supervised release was to end in 1998, but in 1995, the court issued an arrest warrant after he failed to report to his probation officer as directed, and he was not arrested until 2008. 638 F.3d at 449. In affirming the order of revocation, the Fourth Circuit reasoned that the "supervised release term was tolled during the 13 years he was a fugitive, and it recommenced when the court was able to exercise supervision over him. Because he had approximately three years remaining on his supervised release term, the court had the authority to revoke his supervised release[.]" *Id.* at 458.

have suggested that a probationer's fugitive status and tolling commence when he fails to report to his probation officer and stops submitting required reports, even if a bench warrant does not issue until sometime later. *See, e.g.*, *United States v. Watson*, 633 F.3d 929, 931-32 (9th Cir. 2011) ("A defendant's term of supervised release is tolled . . . when he fails to comply with the terms of his supervised release.") (internal quotes omitted); *State v. Smith*, No. 63095, 1992 WL 309351, at *1 (Ohio Ct. App. Oct. 22, 1992) (per curiam) ("A defendant's willful failure to report to his probation officer tolls his probationary period for the number of days he absconds."). We need not decide whether to adopt that reasoning, and the government has not asked us to go that far; it asserts that tolling occurred only as of January 6, 2003. We hold only that the running of appellant's probationary period was tolled when the court issued the bench warrant for his arrest (marking his fugitive status) in January 2003; did not begin to run again until he was arrested in August 2013; was extended when Judge Rankin set the matter down for a show-cause hearing on August 30, 2013, thereby acting to preserve the court's jurisdiction;[4] and had not expired when Judge Holeman revoked appellant's probation on September 11, 2013.

---

[4] Judge Rankin's action effectively extended the probationary period because it "put the probationer on notice that probable cause exists for revocation of probation and provide[d] him an opportunity to be heard before revocation is effected." *Dent*, 465 A.2d at 843.

## IV.

Due process entitles a probationer in revocation proceedings to "[1] written notice of the claimed violations of his probation; [2] disclosure of the evidence against him; [3] an opportunity to be heard in person and to present witnesses and documentary evidence; [4] a neutral hearing body; [5] and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation." *Black v. Romano*, 471 U.S. 606, 612 (1985) (citing *Gagnon v. Scarpelli*, 411 U.S. 778 (1973)).  Appellant contends that the third of these requirements was not satisfied.  Specifically, he asserts that "[a]lthough defense counsel spoke on [his behalf], the court did not conduct an inquiry of [appellant] prior to revoking his probation."

We review *de novo* whether a revocation of probation entailed a violation of due process rights.  *Morgan v. United States*, 47 A.3d 532, 535 (D.C. 2012).  We review appellant's claim only for plain error, because his counsel did not suggest to Judge Holeman that the court was obligated to inquire of appellant directly during the revocation proceeding and raised no objection to the court's failure to do so, and appellant did not indicate that he wished to speak.  Accordingly,

appellant can be entitled to relief only if he shows (1) that the trial court erred, (2) that the error should have been clear or obvious to the trial judge and (3) affected appellant's substantial rights, and (4) that allowing the error-tainted judgment to stand will seriously affect the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732 (1993).

We can find no plain error, as neither the Supreme Court nor this court has held that the required "opportunity to be heard in person" at a probation revocation hearing invariably requires that the court *sua sponte* conduct a direct inquiry of the probationer.[5] This court has recognized that the requirement of "an opportunity to be heard in person" is not satisfied where the probationer's counsel does "not know his client's explanation" for the alleged failure to comply with the terms of probation and where the probationer is afforded "no opportunity to elaborate upon evidence proffered in mitigation." *Brown v. United States*, 900 A.2d 184, 189, 191 (D.C. 2006); *see also id.*at 188, 189, 190 n.12, 191 (explaining that in light of the

---

[5] Moreover, there is authority that appears to be to the contrary. *See, e.g.*, *State v. Hobson*, 789 A.2d 557, 561-62 (Conn. App. Ct. 2002) ("[D]ue process . . . mandates that a defendant in a probation revocation hearing possesses the right to be heard in person and thus to testify on one's behalf . . . [but] that privilege is not triggered unless [the defendant] takes some affirmative action regarding his right to testify. A trial court is not required to canvass a defendant [in a probation revocation proceeding] regarding whether he or she desires to testify.") (internal quotation marks omitted).

probationer's insistence that he had paid the fine that was linked to his probation, the court and counsel were obliged at least to examine what efforts he had made to pay the fine, whether he had any proof of payment, and whether he had an excusable inability to pay, but had not done so during the hearing that "did not exceed three minutes," thus committing a due process violation); *State v. Coltrane*, 299 S.E. 2d 199, 202 (N.C. 1983) (concluding that the trial court erred in revoking the *pro se* defendant's probation where the "brevity [of] the colloquy [between the court and defendant] show[ed] that defendant was not effectively allowed to speak on her own behalf nor to present information relevant to the charge that she had violated a condition of probation" and "[the] court interrupted defendant and did not permit her to offer any explanation of her failure to obtain employment").

Here, by contrast, appellant was represented by counsel — about whose performance appellant has not complained — who presented a detailed defense about why appellant had failed to report for supervision, to re-appear in court on January 6, and to turn himself in.[6] Further, unlike in *Brown*, the court gave counsel

---

[6] The defense proffered by counsel was the same explanation counsel provided when appellant appeared before Judge Rankin on August 30, 2013, ("he had his son with him and there was no where [sic] to leave his son," "he and his wife called the Clerk's Office to inquire about the case . . . [and] someone that worked in the Clerk's Office . . . told them that they believed the case had been thrown out," and "he also inquired to find out if there were any warrants out for

(continued…)

an opportunity to expand upon appellant's defense by asking follow-up questions such as, "Did [appellant] come back to the judge that handled his original case[?]" and "What happened to the next day [after appellant failed to attend the status hearing], the day after that, the next week, the next month?" *See Brown*, 900 A.2d at 191. Only after hearing counsel's explanations did the judge determine that appellant's defense was "untenable" and revoke appellant's probation.[7] In short, the due process violation we found in *Brown* was not repeated here.

Finally, appellant has not proffered on appeal what he would have added to his counsel's presentation and what his testimony would have been had the court inquired of him directly. He therefore has not shown that the putative error

---

(…continued)
him . . . and . . . was told no"), an explanation appellant presumably could have instructed his counsel to augment on September 11 if there had been more to say. Counsel's representations on September 11 were also consistent with the explanation appellant gave the court when he spoke at length during the sentencing portion of the September 11 proceeding.

[7] We appreciate that, during the August 30 proceeding, Judge Rankin admonished appellant, "I wouldn't believe you on a stack of Bibles but I might listen to the lawyer if you can be quiet." We have therefore considered whether appellant might have been discouraged from speaking (or unduly encouraged to "be quiet") during the show-cause proceeding on September 11. The record does not support such a conclusion; appellant spoke at several points during the August 30 proceeding after Judge Rankin's "be quiet" remark.

affected his substantial rights or that leaving the judgment undisturbed would be unfair or would seriously affect the public reputation of the courts.

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*